FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ FEB 28 2012 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MANGIA MEDIA INC. and AVCO
INDUSTRIES, INC.,

MEMORANDUM AND ORDER

        Plaintiff,

    --against--                                        CV-11-0244
                                                        (Wexler, J.)

UNIVERSITY PIPELINE, INC.,
THOMAS UNGER and COMCAST INC.,

        Defendants.
------------------------------------------------------------X

        LAW OFFICES OF JAMES L. BREEN
        BY: JAMES BREEN, ESQ.
        392 Fulton Street
        Farmingdale, NY 11735
        Attorneys for Plaintiff

        BOND, SCHOENECK & KING, PLLC
        BY: JESSICA SATRIANO, ESQ.
        1399 Franklin Avenue, Suite 200
        Garden City, NY 11530
        Attorneys for Defendant

WEXLER, District Judge:

        Plaintiffs commenced this diversity action seeking damages for breach of contract and fraudulent misrepresentation. Presently before the court is Defendant Thomas Unger's motion, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, to dismiss for lack of personal jurisdiction, or in the alternative, to transfer this matter. For the reasons set forth below the court holds that it lacks personal jurisdiction over Defendant Unger. In the interests of justice, the

court declines to dismiss but will grant the alternative request to transfer this case to the United States District Court for the Northern District of California.

## BACKGROUND

I.  The Parties and Their Business Relationship

Plaintiffs Mangia Media Inc., and AVCO Industries Inc., (collectively "Plaintiffs") are New York corporations with a principal place of business in New York. Named as Defendants are University Pipeline, Inc., ("UPI"), alleged to be a Delaware corporation with a principal place of business in the State of California and the moving Defendant, Thomas Unger, ("Unger"), an individual who is a resident of California and the former CEO of UPI.[1]

Plaintiffs entered into its first contract with UPI on or about August 19, 2009. That contract provided for Mangia to deliver 666,000 two-color pizza boxes to UPI in the State of California for the sum of $114,720.00. The second contract, entered into on or about September 17, 2009, provided for an additional delivery to UPI and payment in the amount of $13,500.00 (collectively the "Contracts").

II. The Complaint and Discovery

Plaintiffs commenced this action alleging that UPI failed to tender payment under the Contracts. At a pre-motion conference held before this court Unger raised the issue of personal jurisdiction and sought leave to move to dismiss. The court directed the parties to engage in discovery limited to the issue of personal jurisdiction before engaging in motion practice.

---

[1] Plaintiff's complaint also named Comcast, Inc., as a Defendant. Plaintiff has recently discontinued this action against Comcast, Inc.

Jurisdictional discovery over Unger is complete, and the contemplated motion to dismiss is presently before the court.

III.  Defendant Unger's Motion

Unger moves to dismiss for lack of personal jurisdiction. He also moves, in the alternative, for transfer of this matter to the United States District Court for the Northern District of California– a forum that would have personal jurisdiction, where venue is appropriate. In support of his motion Unger asserts that even after taking full jurisdictional discovery, Plaintiff can establish no basis for the exercise of personal jurisdiction under New York law or the United States Constitution. Plaintiffs, on the other hand, assert the existence of jurisdiction pursuant to Section 302(a)(3) and Section 302(4) of the New York Civil Practice Law and Rules ("CPLR"), New York's Long Arm statute. After reviewing relevant legal principles, the court will turn to the merits of the motion.

## DISCUSSION

I.  Personal Jurisdiction: General Principles

Where, as here, a plaintiff has engaged in jurisdictional discovery, it is the plaintiff's burden to make a prima facie showing of facts that would if credited, establish jurisdiction over the defendant. In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003).

There is a two-step analysis to determine whether personal jurisdiction exists over a non-domiciliary. First, this court must apply New York's Long Arm statute. That statute provides for the exercise of jurisdiction over non-domiciliaries for causes of action arising from certain enumerated activities. See generally CPLR §302. If New York's Long Arm Statute is satisfied the court must then determine if asserting jurisdiction comports with federal Constitutional

principals of due process. <u>Grand River Enterprises Six Nations, Ltd. v. Pryor</u>, 425 F.3d 158, 165 (2d Cir. 2005).

II.     <u>The Parties' Positions</u>

In support of the argument that this court has personal jurisdiction over Unger, Plaintiffs rely on the facts that Unger was admitted to practice law in New York and possesses an ownership interest in real property located here. With respect to the latter ground, Plaintiffs note that Unger is one of several investor-mortgagees on a New York property. Plaintiffs' personal jurisdiction argument also relies on emails sent to Plaintiffs by Unger on June 2, 2010 and June 10, 2010. Plaintiffs argue that Unger engaged in fraud when sending these emails from California to New York to advise Mangia that it would be paid, while also asserting that Mangia had, in some way, failed to fully perform under the Contracts.

Unger argues that his contacts with New York are less than minimal, and in any event insufficient to support jurisdiction under New York law. Specifically, Unger states that he has neither property, bank accounts, employees, offices, phone listings, nor a mailing address in the State of New York. Additionally, he did not consent to be a party to a lawsuit in New York, and has no agent for service of process within the state. Indeed, as stated at his deposition, the only extent of Unger's physical contact with the State of New York consists only of passing through New York while in transit to Massachusetts.

With respect to the facts of this case, Unger states that he was UPI's CEO from March 16, 2006 to December 31, 2010. With respect to the issue of contract performance, Unger states that he neither negotiated nor executed the Contracts. He admits that he was admitted to the Bar of the State of New York in 1995, but notes that his status as an attorney in this State has been

4

stated as "inactive," since 1999. As to any real estate, Unger characterizes himself as a single investor, who is a member of a group of mortgagees on a single piece of property. Importantly, Unger notes that neither his property interest nor his status as an attorney have any connection with the present lawsuit.

II.  Disposition of the Motion

Plaintiffs allege Long Arm jurisdiction pursuant to Sections 302(a)(3) and 304 of the CPLR. Each ground is discussed below.

A.  Section 302(a)(3)

Section 302(a)(3) of the CPLR provides for the exercise of jurisdiction over a foreign defendant who commits a tortious act outside of the state, which causes injury within the state. Jurisdiction lies under Section 302(a)(3), only if, in addition to causing the alleged injury, the defendant either: (1) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in New York or (2) expects to should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate and international commerce. CPLR §302(a)(3)(i)(ii).

As to the first prong of the long arm statute relied upon, Plaintiffs must make a showing that Unger committed a tortious act outside of New York State that had in-state consequence. CPLR §302(a)(3). Plaintiff's assertion of some type of fraud appears to amount to nothing more than breach of contract allegations. Moreover, while it is premature to rule on the merits of any fraud claim, the court holds that even accepting the allegations regarding fraud, Plaintiffs have failed completely to establish facts to support the exercise of jurisdiction pursuant to either of the

5

revenue requirements of Sections 302(a)(3). Specifically, Plaintiffs can show neither that Unger "regularly does or solicits business, or engages in any other persistent course of conduct in New York, or that he "derives substantial revenue from goods used or consumed or services rendered," in the state . . . ." CPLR 302(a)(3)(i). Additionally, Plaintiffs fail to show that Unger "derives substantial revenue from interstate or international commerce. CPLR §302(a)(3)(ii). Instead, Plaintiffs show nothing more than Unger's connection with a company that entered into two contracts to deliver goods to his home State of California. Such a showing is insufficient to establish Long Arm jurisdiction under the revenue requirements of Section 302(a)(3).

B.  Section 302 (a)(4)

CPLR §302(a)(4) permits the court to exercise jurisdiction arising out of a defendant's ownership or possession of "real property situated within the state." CPLR §302(a)(4). Unger makes clear that he is merely among a group of investors who are mortgagees with respect to a single piece of real property located in New York State. It is also clear that this case has no relation whatever to the mortgaged real property. Under these circumstances, the involvement of Unger with New York real estate cannot form the basis of jurisdiction under Section 302(4) of the CPLR.

III.  Plaintiffs' Remaining Argument

Finally, Plaintiffs argue that Unger's New York State bar membership is sufficient to confer jurisdiction pursuant to the Long Arm Statute. The court disagrees. Plaintiff cites no authority for the broad exercise of general jurisdiction over each and every member of the Bar of this State. Rejecting Plaintiffs argument is especially appropriate where, as here, Unger has

6

neither resided in, nor practiced law in this state for thirteen years, and the action has no connection whatever to the practice of law in New York.

IV.     Due Process

In view of the fact that personal jurisdiction cannot be exercised over Unger pursuant to New York's Long Arm Statute, the court need not address the issue of whether the exercise of personal jurisdiction would offend due process. See, e.g., Bensusan Restaurant Corp. v. King, 126 F.3d 25, 28 (2d Cir. 1997) (where exercise of jurisdiction is proscribed by New York law, court does not address due process issue); see also PDK Labs, Inc. v. Proactive Labs, Inc., 2004 WL 1607703 *1-3 (E.D.N.Y. July 15, 2004) (if exercise of jurisdiction is appropriate under state long arm statute, court then turns to consider due process issue).

IV.     Transfer

Finally, the court considers the issue of transfer. A civil action may be transferred to any other district where it might have been brought, for the convenience of parties and witnesses, in the interests of justice. 28 U.S.C. §1404(a). The decision whether to transfer or dismiss a case "lies within the sound discretion of the district [c]ourt." Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir.1993). Transfer is available to a district where jurisdiction and venue exist, even where, as here, the transferor court lacks personal jurisdiction over a defendant. SongByrd, Inc. v. Estate of Grossman, 206 F.3d 172, 179 n.9 (2d Cir.2000) ("lack of personal jurisdiction [can] be cured by transfer to a district in which personal jurisdiction could be exercised . . ."); see e.g., Pisani v. Diener, 2009 WL 749893 *6 n.6 (E.D.N.Y. 2009); Nautilus Ins. Co. v. Adventure Outdoors, Inc., 247 F.R.D. 356, 360 (E.D.N.Y. 2007).

The parties have made clear that in the event that this court holds that it lacks personal

7

jurisdiction over Unger, they will consent to transfer of this matter to the United States District Court for the Northern District of California. Upon consideration of the facts that personal jurisdiction and venue exist in California, and that the parties have expressed consent, the court holds that the interests of justice favor transfer of this action to the United States District Court for the Northern District of California.

## CONCLUSION

For the foregoing reasons, Defendant Unger's motion to dismiss and/or transfer is granted. The court holds that this matter should be transferred as set forth herein. Accordingly, the Clerk of the Court is directed to terminate the motion to dismiss, transfer the file in this matter to the United States District Court for the Northern District of California and to thereafter close the file in this case.

SO ORDERED

/s/ LEONARD D. WEXLER
_____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
       February 28th 2012